### ENCROACHMENT UPON A HIGHWAY BY A RAILWAY.

Court of Appeals for Hamilton County.

THE BOARD OF COUNTY COMMISSIONERS OF HAMILTON COUNTY V. THE CINCINNATI, HAMILTON & DAYTON RAILWAY COMPANY.*

Decided, August 9, 1913.

*Roads—Encroachment Upon, by the Abutments of an Overhead Railway Bridge—Title to Part of the Roadway Not Acquired by Prescription.*

The claim of the railway company of title by adverse possession to a part of the county road in question can not be maintained as against the charter provision of the original turnpike company safeguarding the rights of the traveling public thereon for all time.

*Affirming *County Commissioners* v. *C., H. & D. Railway Co.*, 12 N.P.(N. S.), 129; judgment of the Court of Appeals reversed, see journal entry, *C., H. & D. Railway Co.* v. *County Commissioners*, 90 Ohio State.

*Pogue, Campbell & Groom,* for the plaintiff.
*Waite & Schindel,* for the railway company.

JONES (E. H.), J.; SWING, J., and JONES (O. B.), J., concur.

We find upon the issues joined in favor of the plaintiff; and that the prayer of its petition for a mandatory injunction herein should be granted.

With the exception of the question of title by prescription we feel that the questions in this case are decided by the Supreme Court of our state in its opinion in the case of *Lake Shore & Michigan Southern Ry. Co.* v. *City of Elyria,* 69 Ohio State, 414,

and upon that question the learned judge who wrote the opinion
in that case stated:

"As to the plea of the statute of limitations made in the an-
swer it is sufficient to say that it is the well settled law of this
state that encroachments upon a public highway never ripen into
a title by adverse possession."

It is true that there was no issue of the statute of limitations
in that case, and it may be well claimed that it is not a con-
trolling authority upon that point.

In determining whether or not a title has been acquired by
adverse possession or prescription the court must be governed
by the facts in each particular case, so that in this case we have
been unable to gather much assistance from cases cited by coun-
sel in their briefs and oral arguments.  Looking for a moment
at the facts in this case, it appears that this road was opened and
used by the turnpike company shortly after its original charter
in 1834, and whether on the particular part crossed by the C., H.
& D. Railway, it was a state or county road prior to becoming a
turnpike the evidence is not clear, but it was in existence at least
sixty feet wide as a public highway at the time the C., H. & D.
Railway was built, and the railway company has failed to show
any title to any part of the land included within this highway.
Its only claim is that the abutments or their predecessors have
existed there since about the year 1851, but exact proof has not
been made.  The original construction of these abutments was
certainly not intended to close the highway or incommode the
traveling public upon it and at the time of their original con-
struction there remained undoubtedly sufficient room to ac-
commodate the public travel between them.  It can not be as-
sumed that their construction and use was under a claim that
the railway company could lawfully exclude the public from
the use of any part of said highway, and no claim can be made
by the railroad company under title by prescription that would
not be much stronger if they could show a title by grant.

In the Elyria case above cited the court has shown that mu-
nicipal authorities had no power to make a grant of a public
highway for the purposes of such a pier or abutment that could

prevent the public from demanding its removal when the necessity of travel required it.

The turnpike company becomes, in a way, a trustee for the state, and no power is shown in a turnpike company to grant its turnpike or such part thereof to a railroad company as would interfere with the rights of the traveling public thereon. The charter under which this turnpike was granted by a special law found in 32 O. L., at page 157, in which the state reserved the right to purchase the entire turnpike, or to allow a county to purchase such part of the turnpike as lay within its boundary, at any time, upon the payment of a certain sum, and convert the toll turnpike into a free public highway, shows that the public retained a valuable interest in the turnpike as a public highway which could not be granted away, and which under the ordinary rule that the statute of limitations can not be pleaded against the state would render any claim made by the defendant railway company by adverse possession insufficient. Outside of the statutory right retained in the original charter the ordinary rule is that an abandoned turnpike becomes a public highway.

Judgment will therefore be rendered for plaintiff, as above stated.